Good morning, and may it please the Court, I'm Joshua Weiss from the Federal Public Defender's Office here on behalf of Appellant Anthony Holmes. I'd like to reserve two minutes and I will keep my eye on the clock. Very good. There are two layers to the lack of reasonable suspicion here that, at least combined, show that the seizure was unjustified under the totality of the circumstances. And those two layers are, first, that the 911 call did not create suspicion as to any actual criminal activity, and second, that any putative suspicion the caller may have created did not attach to Mr. Holmes and the five other people in his vehicle based on the lack of match to the description. I'd like to focus on the first layer here, whether the caller created suspicion as to any actual criminal activity. And I want to highlight that our argument here flows from the principle that to seize someone, officers cannot rely on generalizations that apply to whole categories of people. They instead require facts that, specific to the person detained, that create reasonable suspicion. It's based on this principle that in Hawk, the 8th Circuit ruled that police cannot conduct a protective sweep, to quote the Court, based on the assumption that drug houses are inherently dangerous. Counsel, didn't the caller say that they thought there was a gun involved, that the person had a gun? The caller's specific description was of a man approaching him with his hand in his jacket pocket. He didn't he specifically told Officer Maniocchi that the man did not point. There's no evidence of gesturing, of a bulge, of any grasping. He said he thought the man might have had a gun. But I would point to United States v. Jones as a case that's very much on point, that we discussed in our reply brief. That's an 8th Circuit case where the officer sees someone who they saw walking on the street, clutching the front of his sweatshirt hooded hoodie pocket, in a hot spot in a high crime neighborhood. And there the officer specifically testified that the way in which the man was holding his sweatshirt was indicative of gun possession under the officer's particular training. And the court still said that that was not enough to create reasonable suspicion. I should note in addition that the officer said the man looked nervous and was staring at the officers. Because that suspicion based on those facts, a circuit said, would sweep in too many innocent persons who might be walking in a sweatshirt clutching any other objects, like a water bottle or anything else, or no object at all. Here we have even less than that, where the man, the caller described, approached him simply with his right hand in his jacket pocket. And that's what the district court found at ER 12. There was no gesture, no bulge, no grasping or anything like that. And so what we have is the officers just saying that they recognize the interaction as what they call the gang hit up, which to quote their declaration, they said it often involves a show of force, including displaying or hinting at firearms. But that gets me back to this problem of broad generalizations, right? Hawk said that even though the officers knew that what they were, they were issuing a warrant at a known drug house, just because the inhabitants were known drug dealers, that did not mean that the officers had a reasonable suspicion that the drug dealers were carrying firearms or otherwise dangerous. This court ruled that they were not. Excuse me. Let me just ask you, you've talked about just the positional question, but there was also a report that the person who approached the caller said, you know, came quickly toward him as he came out of the Target store and said, if I'm remembering right, where are you from? Which they also relied on that, the acceleration and the confrontation with the words. So how does that change the analysis? Yeah. And, you know, the officers described that entire interaction, walking up to someone, saying, where are you from? And then the follow up fact was them saying, oh, you're a paisa and walking away. What they had was that. And they said, this meets our description of something we call a gang hit up, which is a general gang behavior. That's more than just, you know, you started out by saying the Eighth Circuit's right. Just putting your hand someplace isn't good enough. But there was more here. And so maybe each of those two pieces alone wouldn't do it. But I don't understand why the combination of them doesn't lead to reasonable suspicion. And I don't mean to keep going back to this, but this court in Granville went the same way as Hawk in the Eighth Circuit, saying that even though officers just knew that a specific person's house was occupied by drug dealers, you know, and testified about how drug houses often have firearms because it's a dangerous industry and how, you know, they can't, that's a dangerous situation. But this individual was suspected of having a firearm by the caller. The caller said, I think he had a gun in his pocket and we had this conversation. So that is specific to the individual. And I know you're saying, well, it was a different individual, but I'm having difficulty with the reasonable suspicion piece of your argument. Understood. I will say that the officers on the scene, having spoken to the individual and hearing the entire story, repeatedly said to each other at the time of the seizure and immediately afterwards that there's no 417, which the government in their brief pointed out was code for no person with a firearm. Well, that means they're not seeing anyone with a firearm. It doesn't mean that someone doesn't have one. Sure. Well, they repeatedly say there's no 417 or nothing like that. They call it a person acting suspiciously, which again is where I believe gets us into that zone of a hunch or generalized suspicion. And we know that reasonable suspicion is not as high of a probable cause or beyond a reasonable doubt. But we point to multiple cases where I think there were more facts indicating a firearm. And again, based on conduct by individuals who, like here, were associated with a group that commits criminal activity and were drug dealers who still you cannot assume just because they had drugs were possessing firearms. What the caller here said was that a man approached him in an intimidating way. He didn't see a firearm. He didn't see any pointing. He didn't see someone gesturing. He didn't see a bulge. He didn't see anything. He was intimidated by these people. And the officers called this a gang hit-up, which is a category of behavior but there was no specific evidence. Someone saying, I think someone has a gun, is not enough to say, therefore, this person certainly has a gun. He was not even trained to recognize indicia of firearm possession. Unlike the officer in Jones, where the court still said, despite his training, despite him recognizing the officers seeing signs of gun possession, still not enough for a reasonable suspicion again. Well, the fact that the caller said, I think he has a gun, can't the officers take that into account along with the totality of the circumstances? It's certainly part of the totality, but we think the totality here just isn't enough. I mean, ultimately, whether there was reasonable suspicion of a firearm is a de novo question, and I think looking at the facts that the caller described, we're pretty thin. And we don't deny that this would have been an intimidating situation for the caller, but whether there was actually evidence of a firearm, and on top of... Is intimidation a crime? The government has not cited any crime other than possession of a firearm, and it's their burden to point to actual criminal activity occurring. Wait a minute. If someone describes an activity and the police officer says, well, it gave me reasonable suspicion to think they were committing Crime A, but actually they were committing Crime B, does that invalidate the follow-up? No. This Court, you know, has said that, for example, sometimes the police officers will mention one traffic violation, but then the government, in its briefing, will mention another. I question. Right. Is intimidation a crime in California? I don't believe just simply intimidation. I don't know the elements of a threat statute, but I would point to Pennington, where this Court said is a case that we cite, where it's ultimately the government's, even though the court can find a different crime than the one the officers relied on, it's the government's burden to point to some crime, and if they fail to do so, then, you know, the court will not reach for other areas of the code. I see I'm running very low on time. If I may reserve the floor. Absolutely. And what we'll do, we'll give you two. Thank you very much. We had a lot of questions for you. Thank you. Thank you. Good morning, Your Honors. Angela Makabali on behalf of the United States. May it please the Court. The only issue here today is whether the officers had reasonable suspicion to stop, detain, and question the occupants of the red SUV. And contrary to defense counsel's assertions, there were three factors and ample facts supporting reasonable suspicion. First was the 911 call, which, as Your Honors have already stated, specifically noted two bald Hispanic men, at least one with face tattoos, and the one closest to the victim accelerated towards the defendant. Towards the defendant? I'm sorry. Towards the victim, if you speak, Your Honor. Accelerated towards the victim with a hand on his waist and asks, where are you from? And as defense counsel noted, the caller felt scared. And, in fact, the record of the 911 call says he absolutely thought there was a gun involved based on how the caller approached him. The other factors that the caller described in the 911 call were that the men came from a red SUV, which was parked near the target parking lot, and that is very specific. The second set of facts supporting reasonable suspicion are that the officers knew that this was a high-crime area, not just generally, but specifically, because they knew that a gang-related murder had taken place just across the street the week before. And, two, they believed that this was a gang hit-up based on their training and experience, which, as Your Honors noted, can involve and usually involve concealed firearms. And one of the officers, as they approached the red SUV in the parking lot, also saw a flurry of activity, which is consistent with possibly concealing a firearm. And the third set of … There were kids in the car. There's always flurry of activity when there are kids in the car, I think. But my question is, the body cam footage suggests that one of the officers at least said several times upon approaching the car that there's no crime happening here. Is that relevant to the reasonable suspicion analysis? Your Honor, it is relevant to the reasonable suspicion analysis, but I don't think that it undercuts the reasonable suspicion here, because what they're trying to say is what Judge Owens has said, is they don't see the gun yet. And here, that is a reasonable way to interpret this record, particularly because, first, officers often talk to each other about what they're seeing on the scene. Two, the cross-examination and redirect of Officer Maniaci specifically notes that he thinks that they had a gun. And the district court reasonably concluded and inferred that the person who approached the victim had a gun based on the facts known at the time. And, again, this is always in the reasonable suspicion analysis takes place from the perspective of what the officers know at the time they're engaging in the investigation. And, additionally, the record does not reflect that either Officer Maniaci or Officer Valencia ever acknowledged that they lacked reasonable suspicion. They basically said, we don't see a gun yet, which they are allowed to say. And I don't think that that undercuts the fact that the officers suspected they had a gun based on the 911 call, Your Honor. Is there a difference between saying we don't see a gun here and saying there's no crime happening here, which I think is precisely what one of the officers said? Is there a difference between that, the two? Your Honor, there is a difference between the two, but if they're particularly saying there is no crime here, I think in the context of an ongoing investigation, the fact that they're saying there is no crime here could reasonably refer to they have not seen a crime, whereas the caller described both a person possibly concealing a gun, which is a crime, and two, a person threatening him. The caller clearly stated that he felt threatened. There is a criminal statute, California Penal Code 422, that criminalizes threats, and because that crime already happened, it could be that they are also investigating that at the time. Well, could it also reference the officer's state of mind that upon approaching the vehicle, they didn't think there was a reasonable suspicion anymore? Could it also mean that? Given — I don't believe so in this context, Your Honor, because they are saying that they don't yet see the gun, and because — and as Your Honor knows, the standard is an objective standard. It's not what the officers say or what they're thinking subjectively, and the case law is clear on that. I'm going to ask you about that because if one officer thinks that there's a crime and one officer doesn't, we don't — I mean, what's our job in that setting? Your Honor, the court looks at the totality of the circumstances. Here, it seems that defense counsel is trying to divide and conquer rather than look at the totality of the circumstances. And here — I was just going to add, you had started by saying there were three things, and I think you got through two of them. Did you get through all three, or is there a third aspect? Thank you very much, Your Honor. There is a third aspect, which is the corroboration of what the caller described and what the officers found on the scene. And the officers found a red SUV, specifically where the caller had described, and there were two bald men of color inside. And not only did one have face tattoos, both of them had face tattoos. And so together, that totality of the circumstance, Your Honor, amply gives — the government's position is that amply gives rise to reasonable suspicion here. And if the panel does not have further questions, I would just go back to the fact that this is not a high standard and that because it's far lower than preponderance of the evidence, it could be just as likely that the person was not the same person for reasonable suspicion not to be undercut. And I noticed there were a lot of negatives in that. But with that, if the panel has no further questions. I don't. Thank you. Thank you. Thank you again, Your Honors. Counsel brought up testimony at the hearing, so I just wanted to emphasize Officer Muniaki twice during his testimony, first at ER 26. He specifically said that the 911 call did not report an actual crime. That's a quote. And at ER 30, he said that he didn't believe that a crime had occurred when he began searching the vehicle, which was well after the seizure had occurred. Now — What if he was wrong? What if we look at that 911 call and determine that it did state a crime? Do we go with what the officer thought, or do we go with what we think is the correct analysis of what happened? You know, a certain level of deference to the officers on the scene does not mean the court cannot disagree with them. But I think the standard was helpfully articulated by the Fourth Circuit in Hill 649 F3rd 258 Note 1, where it said, the officer's belief is evidence of a reasonable reading of the objective facts from an experienced officer's perspective. And, you know, we cited cases from this circuit also saying their view of the facts, not just the actual factual findings, but their inferences deserve some deference there. Well, my question really was about the conclusion or the legal conclusion that there was no crime described. So if someone said, well, the guy had a concealed weapon, but in my view, that's not a crime, that wouldn't be correct. And so that's why I'm asking the question. Yeah, and I think this distinction is a little bit fine. I recognize that. But, you know, as a factual matter, I think the question is their factual inferences are given deference. Their legal conclusions are not. But whether or not the man had a gun, I believe, is a factual question. And I think some of the court's questioning indicated, you know, they said no 417 wasn't so clear if they meant a person didn't have a firearm at all or hadn't shown one. But the fact that they also say no crime indicates no crime at all, including the fact that a person had a gun. I would also, in terms of threats, what the officers say is that the suspicion here was based on implied intimidation, based on the way someone looked. That is far short of what threat statutes require. Implied intimidation is obviously a scary, like a standard that could be abused for a lot of folks. I see I'm out of time, and I don't want to run over. But thank you. I will submit. Very well. Thank you both. Thank you both for your briefing and your argument in this case. This matter is submitted.
judges: GRABER, OWENS, Tunheim